Albert Byron NOLES et al., Appellants,

v.

Gussie NEWBERRY, Executrix et al., Appellees.

No. 3600.

Court of Civil Appeals of Texas.

Eastland.

Jan. 27, 1961.

Rehearing Denied Feb. 17, 1961.

Allen Melton, Dallas, Geo. M. Elliott, Dallas, for appellants.

Clay Caggins, Roby, Edmund C. Yates, Abilene, Charles Nunn, Sweetwater, for appellees.

GRISSOM, Chief Justice.

Gussie Newberry, independent executrix of the estate of L. W. and Hattie M. Noles, deceased, sued Albert Byron Noles and others for the purpose of obtaining a construction of the joint will of the Noles and a declaration of the rights of Albert Byron Noles and others. In paragraph one of said will there was a provision that all the property of the two testators was devised to the survivor of the testators for life and "upon the death of such survivor all of such estate shall be given to the hereinafter named persons as herein directed". Paragraphs 3 to 7, inclusive, were as follows:

"No. 3. We hereby give and bequeath to our daughters Addie Leona Allen, wife of Monroe Allen; Mabel Kimsey, a widow; Mildred Rhoton, wife of Earl Rhoton; and Gussie Newberry, wife of S. M. Newberry; all of the real and personal property not otherwise disposed of in this will, including cash on hand in the bank, notes and accounts, and Chose in action; that we may own at the date of the death of the survivor of us, share and share alike.

"No. 4. We hereby give and bequeath to our son, Howard M. Noles, and his wife, Joyce Noles, the Northeast one-fourth of Section twenty-four, Block No. two, H. & T. C. Ry. Co. Survey, located in Fisher County, Texas, for and during their natural life and to the survivor of them for the natural life of such survivor, and if there be any children born to said marital union of Howard M. Noles and wife Joyce Noles, then it is our will and desire that such child or children shall have and own said land in fee simple after the death of the survivor, but if there be no children born to said marital union living at the death of such survivor or the descendants of such children, then such property shall go to the other named devisees in this will, share and share alike.

"No. 5. We hereby give and bequeath to our granddaughter, Bobbie Louise Noles, the only surviving child of our deceased son, Jeff Noles, the Northwest one-fourth of Section Twenty-four, Block No. two, H. & T. C. Ry. Co. Survey, located in Fisher County, Texas, for and during her natural life, and if the said Bobbie Louise Noles shall die leaving heirs of her body, then it is our will and desire that at the date of the death of the said Bobbie Louise Noles, her children be and are hereby given the land last above described in fee simple title; if there be more than one, share and share alike, and further if the said Bobbie Louise Noles shall die leaving no child or children or their descendants, then said property shall be given to the other devisees named, herein, share and share alike.

"No. 6. It is our will and desire and we hereby give and bequeath to our son, A. B. Noles, the Southeast one-fourth of Section thirty-nine, Block No. three, H. & T. C. Ry. Co. Survey in Fisher County, Texas, for and during his natural life, and if our said son A. B. Noles, who is now a single man should after the date of this will remarry and should there be children born to such union, surviving

after the death of our son A. B. Noles, then the above described property as given to A. B. Noles for his lifetime shall go to the child or children of such marital union as the case may be and they shall have the same in fee simple title, but if our said son does not remarry after the date of this will and does not leave heirs of his body born to such marital union or their descendants then the property herein given to our son A. B. Noles for his natural life shall go to the other named devisees in this will, share and share alike.

"No. 7. It is our will and desire and we want it understood and hereby direct that if any of our children named herein die before the survivor of us, leaving a child or children, then the part that would have gone to such one shall go to the/or child, children, or their descendants as the case may be in the same proportions as under the law of decent and distribution."

No other provision of the will is important in determining the question presented.

The will was executed by L. W. Noles and wife on August 12, 1944. In September, 1954, they executed a codicil which, omitting the formal parts, is as follows:

"We, L. W. Noles and wife, Hattie M. Noles, being the testators in the above and foregoing last will and testament dated August 12, 1944, are desirous of changing only Paragraphs Numbers 4 and 5 on Page 2 there of of our will, and being of sound mind and disposing memory. We hereby change said Paragraphs Numbers 4 and 5 of our will and they shall hereafter read as follows:

"No. 4. Having this day conveyed in fee simple all of the North One-half (N½) of Section Number Twenty-four (24), Block Number Two (2) H. & T. C. Ry. Company Survey, Fisher County, Texas, to our son Howard M. Noles and his wife, Joyce Noles, we hereby will and bequeath to them the said Howard M. Noles and wife, Joyce Noles, and to each of them the sum of One Dollar ($1.00).

"No. 5. Having given the sum of Eight Thousand Dollars ($8000.00) in cash to Bobbie Louise Noles Sumerlin, our granddaughter, who is the daughter of our deceased son, Jeff Noles, we hereby will and bequeath to her, the said Bobbie Louise Noles Sumerlin, the sum of One Dollar ($1.00)."

A. B. Noles, who in paragraph 6 was devised a life estate in a certain one-fourth section of land, married Amy Snapp and to that marriage was born Albert Byron Noles, who is the appellant. A. B. and Amy Noles were divorced prior to execution of said will. A. B. Noles never married again. He died in 1956. Hattie M. Noles died in 1954. L. W. Noles died in 1959.

When the will was executed the testators owned six quarter sections of land which they continued to own until they died, except the two quarter sections which they conveyed to Howard and Joyce Noles when they executed the codicil. The two quarter sections conveyed to Howard and Joyce Noles included the quarter section which had been devised to them and the quarter section which had been devised to Bobbie Noles Sumerlin in the original will. At the time they executed the codicil the testators conveyed said two quarter sections to Howard and Joyce Noles and gave Bobbie Noles Sumerlin $8,000.

A. B. Noles was a son of the testators and the father of Albert Byron Noles, who was about eighteen when the will was executed. Albert Byron Noles claimed all the property "devised to the said A. B. Noles" and that, as an heir at law, he was entitled to that portion of the estate "otherwise due A. B. Noles under the law of descent and distribution". The daughters named in paragraph 3 claimed all the estate, except

the $3 given Howard and Joyce Noles and Bobbie Noles Sumerlin in the codicil. They alleged the only interest ever given to A. B. Noles was a life estate in a specific one-fourth section of land and that, as reversionary devisees in paragraph 3, they were entitled to the estate, including the quarter section described in paragraph 6, as the "other named devisees", within the meaning of paragraph 6.

The trial was to the court. The court found that paragraphs 4 and 5 were revoked by the codicil and that Howard and Joyce Noles and Bobbie Louise Noles Sumerlin were entitled to only the $3 given them in the codicil. It found that Albert Byron Noles was not entitled to anything; that his father, A. B. Noles, left no child of a marriage entered into after execution of the will and that the quarter section given to A. B. Noles for life, provided he was alive at the death of the last of the testators, went to the testators' daughters named in paragraph 3. Judgment was rendered accordingly. Albert Byron Noles alone has appealed.

Appellant says he is entitled to one-fourth of a section of land by virtue of paragraph 7; that paragraphs 6 and 7 contain a devise of the same property but the ultimate beneficiary is to be determined by the sequence of death. He contends that, if paragraph 7 does not give him the fee-simple title to a one-fourth section, that he is entitled to take "by substitution under paragraph 7 and that his name should be read into clause 6 instead of his father's", wherefore, he is entitled to a life estate in said one-fourth section, with remainder in fee to his children.

In paragraph 4 there was devised to Howard and Joyce Noles a life estate in a specific one-fourth section of land with provision that the fee-simple title to that land should vest in the surviving children of Howard and Joyce Noles at their death. It provided, however, that if Howard and Joyce Noles had no children at their death "such property" should go to the "other named devisees". Paragraph 5 contained a devise of a specific one-fourth section to Bobbie Louise Noles for life. At her death her children were given the fee-simple title to said tract. It provided that if she left no child "said property" should go to "the other named devisees". In paragraph 4 it is distinctly provided that if Howard and Joyce, not some other wife of Howard, should leave children their children should take title to certain land. In paragraph 5 it was provided that if Bobbie Louise left children, without regard to who the father might be, her children should take title to the land given to Bobbie Louise for life, but if no child survived her, then "said property" should go to the other named devisees.

Paragraph 6, in which one-fourth of a certain section was devised to A. B. Noles for life, shows a distinctly different intention relative to one of testators' grandchildren, to-wit, Albert Byron Noles. Testators knew when they executed the will that A. B. Noles had a son, Albert Byron Noles, about eighteen years of age, by a marriage that had terminated in divorce. Although testators gave A. B. Noles a life estate in a certain one-fourth section they did not give his children the title to said land. Instead, they gave title to "said property" only to A. B. Noles' children by a subsequent marriage. They specifically directed that if A. B. Noles had no child by a subsequent marriage said property should go to the "other named devisees". Thus, testators made it evident that they did not intend for Albert Byron Noles to take title to the land his father might have had for life. Only A. B. Noles' children by a subsequent marriage could take title to said quarter section.

A. B. Noles died before the survivor of the testators and left a child surviving, to-wit, Albert Byron Noles. Paragraph 7 gives to a grandchild of testators whose parent dies before the survivor of the testators "the part" of the estate that would have gone to his parent. In paragraph 1 it

is provided that at the death of the survivor of the two testators all their estate shall go to the "hereinafter named persons as herein directed". Now, it is evident from paragraph 1 that none of the devisees took anything until after the death of the survivor of the testators. A. B. Noles died after his mother but before his father. The only interest A. B. Noles would ever have been entitled to was a life estate in a certain one-fourth section, which was to go to the "other named devisees" unless A. B. left children by a subsequent marriage. He would never have become entitled to a life estate unless he were alive at the death of the survivor of the testators. Even under paragraph 7, taken alone, A. B.'s child, Albert Byron, could take only the part that would have gone to A. B.

Paragraph 6 does not direct that the reversion go to the "other named devisees" on the general failure of issue, as did paragraph 5. It provided for such reversion in the absence of children of A. B. Noles by a subsequent marriage, without regard to the existence of Albert Byron. Testators intended that if A. B. Noles did not marry again and have a child by a subsequent marriage that at his death the land given to A. B. Noles for life should go to the "other named devisees". There was a disposition of the property for life with the class of contingent remaindermen clearly specified, to-wit, the descendants of a subsequent marriage of A. B. Noles or, upon failure of that contingency, the "other named devisees". But, regardless of whether A. B. Noles did or did not have children by a subsequent marriage, Albert Byron Noles got nothing. His father never acquired any interest in the estate because he was to have only a life estate and was to receive that only after the death of the survivor of the testators. A. B. Noles died before his father. A. B. Noles never owned any part of the estate and Albert Byron Noles acquired nothing by inheritance. Albert Byron Noles acquired noth-

ing by virtue of the provision in paragraph 7 that if a child died before the survivor of the testators that "the part that would have gone to such" child (A. B. Noles) should go to his children. No part of the estate would have, under any contingency, have gone to A. B. Noles, within the meaning of paragraph 7. In the preceding paragraphs, when provision was made for title to specific tracts to vest in grandchildren, references were to "said land" and "such property". Here reference was to "the part" of the estate that would have gone to a child had he survived testators. From the whole will we conclude testators did not intend to give appellant anything. There was no provision for the remainder to go in any event to Albert Byron Noles. See Goodson v. Goldsmith, 131 Tex. 418, 115 S.W.2d 1100, 1102. The "other named devisees" took title on the death of the last of the testators, regardless of the order in which death occurred. The only contingency provided for which would cause the land described in paragraph 6 to descend otherwise, to-wit, that A. B. Noles marry again and have a child by a subsequent marriage, never happened. If it had it would not have helped Albert Byron Noles.

The provision in paragraph 7 that if any of testators' children died before the last of the testators "the part that would have gone to such one" shall go to his children gives nothing to Albert Byron Noles. A. B. Noles could not take a life estate in said land under the will until the death of the survivor of the testators. A. B. died before that time, therefore, he took nothing. The only "part" of the estate that would have gone to A. B. Noles, in any event, was a life estate in a one-fourth section of land. Albert Byron could not acquire his father's life estate. It would have terminated at his father's death if it had ever commenced.

The trial court correctly interpreted the will. The judgment is affirmed.